**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 12-cv-01945-REB

NANCY A. DEEGAN,

    Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1][2], filed July 26, 2012, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that she is disabled as a result of degenerative disc disease,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. **FED. R. CIV. P.** 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need to taken to continue this lawsuit.

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

osteoarthritis, systemic lupus erythematous ("SLE"),[3] fibromyalgia, and headaches. The Commissioner granted plaintiff's application for disability insurance benefits in part and awarded her benefits from November 22, 2002, through May, 2006. Plaintiff requested a hearing before an administrative law judge to challenge the determination that her disability ceased prior to her date last insured. A hearing on this matter was held on January 21, 2011. The ALJ issued an unfavorable decision, and plaintiff appealed. The Appeals Council vacated the decision and remanded to the ALJ for a proper cessation analysis using the Commissioner's eight-step sequential evaluation process in cases such as this.

Accordingly, a second hearing was held on July 13, 2010. At the time of this hearing, plaintiff was 45 years old. She has past relevant work experience as an appointment clerk, information clerk, and service clerk. She has not engaged in substantial gainful activity since November 25, 2002, her alleged date of onset.

The ALJ found that plaintiff was not disabled after February 28, 2006, because she experienced medical improvement in her impairment related to her ability to work, and therefore that she was not entitled to disability insurance benefits past that date. Although the medical evidence established that plaintiff's osteoarthritis of the knees and degenerative disc disease continued to be a severe impairments after February 28, 2006, the judge concluded that the severity of those impairments did not meet or equal

---

[3] "Systemic Lupus Erythematosus (SLE or lupus for short) is disease of the immune system (autoimmune disease) affecting many different organ systems throughout the body. Neurological and psychiatric symptoms occur in many patients due to the disease process itself however the issue is further complicated by the fact that drugs used in SLE and other 'rheumatological' conditions may have a variety of neurological side effects. In addition neurological problems may result from damage to other organ systems such as the liver and kidneys." ***Lupus Neurology***, *available at* http://www.asktheneurologist.com/lupus-neurology.html (last accessed on April 29, 2013).

any impairment listed in the social security regulations after that time. SLE, fibromyalgia, and headaches were found to be non-severe impairments. The ALJ found that plaintiff had the residual functional capacity to perform sedentary work with certain limitations. As these limitations were compatible with the demands of plaintiff's past relevant work, the ALJ found plaintiff not disabled at step four of the sequential evaluation. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. **See Kelley v. Chater,** 62 F.3d 335, 338 (10th Cir. 1995).

A claimant who has previously been found disabled is subject to periodic review to determine her continuing entitlement to benefits. **See** 20 C.F.R. § 404.1594(a). The

standards for deciding continuing eligibility apply both when benefits are sought to be terminated and when the Commissioner awards a closed period of benefits. ***Shepherd v. Apfel***, 184 F.3d 1196, 1200 (10th Cir. 1999). Benefits will be discontinued when there has been medical improvement in the claimant's impairments that is related to the ability to do work. 20 C.F.R. § 404.1594(a). "Medical improvement" is any decrease in the medical severity of the impairments based on changes in the symptoms, signs, and/or laboratory findings associated therewith. *Id*. § 404.1594(b)(1). Medical improvement is related to the ability to do work if these changes correspond to an increase in the claimant's functional capacity to perform basic work activities. *Id*. §§ 404.1594(b)(3) & (b)(4).

The Commissioner has established a seven-step sequential evaluation process for determining whether a claimant who has previously been found disabled has experienced medical improvement related to the ability to do work:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimant's impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

3. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must then determine whether there has been any medical improvement in that condition.

4. If there has been medical improvement, the ALJ must consider whether such improvement is related to the ability to work.

5. If the ALJ finds that the claimant has experienced medical improvement related to the ability to work, she must then

          determine whether all current impairments are severe.[4]

6. If the claimant's remaining impairments are severe, the ALJ must determine whether the claimant can perform her past work despite any limitations.

7. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1594(f)(1)-(8). ***See also Hayden v. Barnhart***, 374 F.3d 986, 988 (10th Cir. 2004). The Commissioner bears the burden of demonstrating that the claimant has experienced medical improvement such that she now can engage in substantial gainful activity. 20 C.F.R. § 404.1594(b)(5); ***Glenn v. Shalala***, 21 F.3d 983, 987 (10th Cir. 1994); ***Underwood v. Shalala***, 985 F.Supp. 970, 977 (D. Colo. 1997).

      Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."

---

[4] In an optional eighth step, if the ALJ finds at step 3 that there has been no medical improvement, or if she concludes at step 4 that any medical improvement is not related to the ability to work, she must then consider whether any of the exceptions listed in 20 C.F.R. § 404.1594(d) & (e) apply. *See* 20 C.F.R. § 404.1594(f)(5).

***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

The ALJ determined that plaintiff was disabled from November 25, 2002, through February 28, 2006, but that thereafter, she experienced medical improvement in her ability to do work such that her severe impairments were no longer disabling through her date last insured, September 30, 2006.  It is critical to note the extremely limited time period under consideration in this case.  ***See*** 20 C.F.R. § 404.131(b); ***Ivy v. Sullivan***, 898 F.2d 1045, 1048 (5th Cir. 1990); ***Ward v. Shalala***, 898 F.Supp. 261, 263 (D. Del. 1995).

Plaintiff first argues that the ALJ erred in not finding that SLE and multiple joint osteoarthritis (as opposed to osteoarthritis of the knees only) were severe impairments. A condition should be considered severe unless it is no more than a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." **Social Security Ruling 85-28**, 1985 WL 56856 at *3 (SSA 1985).  Although the threshold for establishing severity at step 2 is *de minimis*, the mere fact of a diagnosis is insufficient.  ***Hinkle v. Apfel***, 132 F.3d 1349, 1352 (10th Cir. 1997).

It is plain that plaintiff's SLE did not meet this standard at any point. Her condition was consistently noted to be "extremely mild"and "stable," even well past her date last insured. (*See* Tr. 845, 854.)  Indeed, plaintiff's treating physician, Dr. Martha D'Ambrosio, noted that plaintiff's symptoms "barely fit[] criteria and has not showed activity for many years." (Tr.845.)  Although the record shows that osteoarthritis affected various of plaintiff's other joints, the majority of this evidence post-dates her date last insured. (*See, e.g.*, Tr. 799, 823-824, 828-830, 835-839, 840-841, 844-847, 871, 876-877, 881-904.)  That which does not fails to clearly demonstrate any work-related functional limitation attendant on this diagnosis.[5] (*See* Tr. 382, 483, 842.) Moreover, given that the ALJ found at least one impairment to be severe and thus proceeded to the subsequent steps of the sequential analysis, any error in not finding plaintiff's other alleged impairments also severe was ultimately harmless.  *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

Plaintiff next argues that the ALJ erred at step 3 of the sequential evaluation by failing to consider her degenerative disc disease under section 1.04A of the listings.[6] However, plaintiff fails to articulate how this alleged omission materially impacted the

---

[5] I note here that plaintiff's counsel's practice of merely copying portions of the medical records verbatim into his brief and then suggesting, without explication, that they show error, is singularly unhelpful and nearly unreviewable.  This "just-so" approach does not substitute for an actual argument linking the evidence of record to any alleged errors in the ALJ's determination. Counsel must actually present an argument describing how he believes the underlying evidence supports a contrary conclusion.  *See Gross v. Burggraf Construction Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995); *Jarare, LLC v. Darling*, 2010 WL 1435560 at *1 (D. Colo. April 9, 2010).

[6] The Commissioner's Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (effective Aug. 2, 2010), sets forth medical criteria pursuant to which impairments of various bodily systems will be considered presumptively disabling. 20 C.F.R. § 404.1520(d).  *See Sullivan v. Zebley*, 493 U.S. 521, 532, 534-35, 110 S.Ct. 885, 893, 107 L.Ed.2d 967 (1990).  Section 1.00 addresses disorders of the musculoskeletal system, and section 1.04 thereunder deals specifically with disorders of the spine.

disability determination.  She points to no evidence suggesting that any of the criteria of the listing are met, let alone all of them.[7]  **See Sullivan v. Zebley**, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (footnote omitted).  I thus conclude that any error in this regard was harmless.  **See Bernal v. Bowen**, 851 F.2d 297, 303 (10th Cir. 1988).

Plaintiff's concomitant challenge to the ALJ's determination that plaintiff's knee osteoarthritis did not meet the requirements of listing 1.02A is similarly deficient.  Most of the evidence cited by plaintiff is far removed in time from her date last insured.  While the minimal evidence prior to that time clearly shows that plaintiff had pain, nothing in those records clearly demonstrates that she met all the criteria of the listing.  **Sullivan**, 110 S.Ct. at 891.[8]

Nor do I find any merit in plaintiff's suggestion that the ALJ was required to

---

[7] Spinal disorders are presumptively disabling when the following criteria are met:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

[8] For example, section 1.02A requires evidence of an "inability to ambulate effectively," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02A, which is defined as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) *that limits the functioning of both upper extremities*," *id.* § 1.00b2b(1) (emphasis added).  Plaintiff points to nothing in the copious record to suggest that she required the use of a walker, two crutches, or two canes.  ***See id***. § 1.00b2b(2).

consult a medical expert for an opinion on whether plaintiff's condition equaled the listing. Not only does plaintiff again fail to demonstrate how her impairments might merit a finding of equivalence, but the state agency physician's opinion constituted substantial evidence in support of a finding of equivalence. (Tr. 66, 800-808.) *See* **Social Security Report** 96-6p, 1996 WL 374180 at *3 (SSA July 2, 1996) ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review.").

By her third point of error, plaintiff claims that ALJ erred in failing to assign more than minimal weight to the opinion of her treating source, Dr. Martha D'Ambrosio. Dr. D'Ambrosio suggested that plaintiff could lift no more than ten pounds occasionally and carry no more than ten pounds frequently and could sit, stand, and walk for no more than an hour at a time and no more than two hours total in a day. She also suggested that plaintiff might need to lie down to alleviate lower back pain. (*See* Tr. 835-839.) The ALJ gave this opinion, which would have restricted plaintiff to less than sedentary work, "minimal, and certainly not controlling, weight" because it was inconsistent with Dr. D'Ambrosio's own treatment notes and the record as a whole. (Tr. 19.)

I can find no reversible error in this determination. The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2); *see also*

***Watkins v. Barnhart***, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. ***Watkins***, 350 F.3d at 1301. Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. ***Frey v. Bowen***, 816 F.2d 508, 513 (10th Cir. 1987).

Here, the ALJ pointed out that Dr. D'Ambrosio's notes of an August 23, 2006, office visit showed that plaintiff's medications had helped her pain, that her knees were "stable" and moving better despite some crepitus, and that, despite widespread osteoarthritis, she generally was "doing well." (Tr. 848-850.) Although plaintiff faults the ALJ for not considering the broader course of plaintiff's treatment with Dr. D'Ambrosio, this argument ignores the narrow focus on the ALJ's disability determination, which was cabined exclusively to the period prior to plaintiff's date last insured. In fact, the August 2006 office visit constituted plaintiff's sole interaction with Dr. D'Ambrosio between March 1, 2006, and the date last insured.[9] Nor was there any duty to recontact Dr. D'Ambrosio for further clarification, ***see White v. Barnhart***, 287 F.3d 903, (10th Cir. 2001), or to specifically discuss all of the factors that may bear on the weight to be given to treating source opinions, ***see Mestas v. Astrue***, 2010 WL 3604395 at *3 (D. Colo. Sept. 7, 2010). The ALJ did not err in her weighing of the treating doctor's opinion.

Nor do I perceive error in the ALJ's failure to fully credit plaintiff's subjective reports regarding her own limitations. "[C]redibility determinations 'are peculiarly the

---

[9] Indeed, it appears that plaintiff did not see Dr. D'Ambrosio again until January 2008, when it was noted that she had "been doing less well" with "severe fatigue and has pain from head to toe" and was assessed for fibromyalgia. (***See*** Tr. 844-846.)

province of the finder of fact,' and should not be upset if supported by substantial evidence." *White*, 287 F.3d at 909 (quoting **Kepler v. Chater**, 68 F.3d 387, 390-91 (10th Cir. 1995)).  So long as the ALJ links her credibility assessment to specific evidence in the record, her determination is entitled to substantial deference.  *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

      The ALJ noted that plaintiff's own reported activities of daily living were inconsistent with her claims of disabling pain.  (Tr. 18.)  "Although activities of daily living do not necessarily translate to the ability to perform work-related activities on a sustained basis, they do bear on a plaintiff's credibility to the extent that the level of activity is in fact inconsistent with the claimed limitations."  *Jack v. Astrue*, 2010 WL 3615022 at *3 (D. Colo. Sept. 10, 2010) (citations and internal quotation marks omitted). The ALJ specifically tied her determination to the evidence of record (*see* Tr. 244-251), and I can find no reversible error in her conclusion that the level of activity reported by plaintiff did not jibe with plaintiff's subjective reports.

      Finally, plaintiff claims there is no substantial evidence to support the date of cessation found by the ALJ.  This argument is belied by the record, which contains the report of a state agency physician clearly stating that plaintiff's disability ceased as of the date found by the ALJ.  (*See* Tr. 808.)  Moreover, the question whether a claimant has experienced medical improvement related to the ability to work is an administrative determination reserved to the Commissioner, and therefore need not be tied to any particular medical source opinion.  *See Joseph v. Astrue*, 231 Fed. Appx. 327, 331 (5th Cir. May 18, 2007); *see also  Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir.

2012).

Nor am I persuaded that plaintiff's impairments should have been analyzed under the Commissioner's standards applicable to temporary remissions.  *See* 20 C.F.R. § 404.1594(c)(3)(iv).  Even assuming *arguendo* that plaintiff's impairments are properly analyzed under these standards in the first instance, the evidence on which plaintiff relies is so temporally distant from both the date of cessation and the date last insured as to be meaningless to any such analysis.  (*See, e.g.*, Tr. 840-841 (treatment notes from December, 2007, noting increase in pain over prior two months ); Tr. 883-885 (treatment notes from April, 2008, noting post-operative patellar fracture and possible fractured sacrum following spinal fusion).)

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated April 30, 2013, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge